UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Philip White and Susan White,

                           Plaintiffs,

-against-

Apple Bank for Savings,

                           Defendant.

1:22-cv-04481 (SDA)

OPINION AND ORDER

**STEWART D. AARON, United States Magistrate Judge:**

This action, in which Plaintiffs Philip White and Susan White (the "Whites" or "Plaintiffs") asserted claims against Defendant Apple Bank for Savings ("Apple Bank" or "Defendant") under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, and New York law, arising out of allegedly unauthorized transfers from the Whites' accounts at Apple Bank, resolved at a settlement conference before the Court on October 27, 2022. Presently before the Court is Plaintiffs' motion for attorneys' fees and costs in the amount of $240,757.71. (*See* Pls.' Not. of Mot., ECF No. 28; Pls.' Mem., ECF No. 34, at 25.) For the reasons set forth below, Plaintiffs are awarded $90,210.94 in attorneys' fees and costs.

## BACKGROUND

Between July 28, 2021 and August 2, 2021, certain allegedly unauthorized transfers were made from the Whites' accounts at Apple Bank. (*See* Eagle Decl., ECF No. 35, ¶ 15.) On October 21, 2021, the Whites retained the law firm Scarola Zubatov Schaffzin PLLC ("SZS") to review potential claims against Apple Bank after Apple Bank had refused to credit their accounts. (*See id.* ¶ 16.) The October 21, 2021 engagement agreement between Philip White and SZS, which expressly contemplated the matter "progress[ing] to litigation," provided that the time of Bart J.

Eagle ("Eagle") was to be billed at an hourly rate of $500.00 and that other attorneys were to be billed at "such other applicable hourly rates, which shall not exceed $500.00." (*See* 10/21/21 Engagement Agmt., ECF No. 35-7, at 1.)

During the period October 4, 2021 through April 11, 2022, SZS performed legal services on this matter, including communicating with its clients, Apple Bank and others. (*See* Eagle Decl. ¶¶ 35-36.) The Whites incurred, and paid to SZS, the sum of $16,125.00 for legal services provided during that period, representing payment for 31.75 hours billed by Eagle[1] and 0.5 hours billed by Richard J.J. Scarola ("Scarola") at the rate of $500.00 per hour.[2] (*See id*. ¶¶ 35, 38 & Ex. 8.)

On April 28, 2022, the Whites entered into a new engagement agreement with SZS. (*See* Eagle Decl. ¶ 39.) The April 28, 2022 engagement agreement contained a contingency arrangement, whereby SZS would receive one third of any recovery up to $102,370.42, which was the amount allegedly stolen from their accounts, and 40% of any recovery greater than that amount. (*See* 4/28/22 Engagement Agmt., ECF No. 35-9.)

On May 31, 2022, the Whites filed their Complaint in this action.[3] (*See* Compl., ECF No. 1.) On July 14, 2022, Apple Bank filed its Answer. (*See* Answer, ECF No. 11.) On July 25, 2022, Apple Bank requested that a settlement conference be scheduled, stating that "[a]lthough the Bank is

---

[1] The Eagle Declaration states in paragraph 38 that Eagle billed 33.25 hours during the period October 4, 2021 through April 11, 2022. (Eagle Decl. ¶ 38.) However, when one calculates the number of hours billed by Eagle from the actual invoices, the hours billed by him during that period was 31.75, not 33.25. (*See* Eagle Decl. Ex. 8, ECF No. 35-8.)

[2] SZS wrote off, and did not bill the Whites for, 4.75 hours for Eagle's time and 0.75 hours of Scarola's time. (*See* Eagle Decl. ¶ 38.)

[3] Due to a filing error, the Complaint was refiled on June 1, 2022 at ECF No. 3.

prepared to vigorously defend this matter, it would prefer to try to resolve the matter at the outset without the need for further litigation." (*See* Def.'s 7/25/22 Ltr., ECF No. 12, at PDF p. 2.) On July 26, 2022, this action was referred by Judge Preska to the undersigned for settlement purposes. (*See* Order of Ref., ECF No. 13.) On July 26, 2022, subsequent to the referral, the Whites filed a letter stating that a settlement conference would be premature unless Apple Bank provided certain "core documentation," and requesting that the settlement referral be vacated. (*See* Pl.'s 7/26/22 Ltr., ECF No. 14.)

Following further correspondence filed by the parties regarding the settlement conference and the documents to be produced prior to the settlement conference (*see* Def.'s 7/26/22 Ltr., ECF No. 15; Pls.' 7/27/22 Ltr., ECF No. 16), the parties filed a joint letter on September 21, 2022 requesting a conference before the undersigned regarding "some issues [that] remain[ed] as to the [document] production being complete." (*See* 9/21/22 Joint Ltr., ECF No. 18.) On September 21, 2022, Judge Preska issued an Amended Order of Reference authorizing the undersigned to "[s]upervise the production of the 'core, pertinent documents' that Plaintiff seeks to have a settlement discussion." (*See* Am. Order of Ref., ECF No. 19.)

On September 28, 2022, a telephone conference was held before the undersigned to address the document production issue and, on September 29, 2022, a settlement conference was scheduled to occur on October 27, 2022. (*See* 9/29/22 Order, ECF No. 21.) The settlement conference took place on October 27, 2022 and lasted about three hours. (*See* Yuzek Aff., ECF No. 32, ¶ 28.) Following the conference, the undersigned made a "proposal to settle this case," which the parties were required to accept or reject by 5:00pm on October 31, 2022. (*See id*.) The proposal included a monetary payment to the Whites "in full and final settlement of all claims,

3

inclusive of interest," and payment to the Whites of "reasonable attorneys' fees and costs in an amount to be determined by the Court." (*See id*.) Both Apple Bank and the Whites accepted the proposal. (*See id*. ¶ 29.)

On November 30, 2022, the parties executed a settlement agreement. (*See* Yuzek Aff. ¶ 30.) The settlement agreement provides in relevant part: "Apple Bank shall pay the Whites' reasonable [attorneys' fees and costs] in an amount to be determined by the Court."[4] On December 22, 2022, Judge Preska referred this action to me, on the parties' consent, for all purposes. (*See* Consent, ECF No. 26.)

On January 13, 2023, Plaintiffs filed their motion currently before the Court seeking "an Order fixing the amount of attorneys' fees and costs to be awarded to plaintiffs in accordance with the terms of the Settlement Agreement between the parties effective November 30, 2022." (*See* Pls.' Not. of Mot. at 1.) Plaintiffs seek to recover on their motion $225,649.50 in attorneys' fees and $15,108.21 in costs, for a total of $240,757.71. (*See* Eagle Decl. ¶ 47.)

**LEGAL STANDARDS**

Parties may agree by contract to permit recovery of attorneys' fees. *See U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co*., 369 F.3d 34, 74 (2d Cir. 2004).[5] Here, the parties agreed in settlement that Defendant would pay Plaintiffs reasonable attorneys' fees and costs in an amount to be determined by the Court.

---

[4] A copy of the settlement agreement was provided to the undersigned, but is not being publicly filed due to a confidentiality provision regarding the amount and nature of the settlement.

[5] The Court also notes that the EFTA provides a private right of action for violations of the EFTA that includes recovery of actual damages, costs and attorneys' fees. *See Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 493 (E.D.N.Y. 2020). The EFTA provides, "in the case of any successful action to enforce" liability under the statute, a plaintiff may recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." *See* 15 U.S.C.A. § 1693m.

In determining reasonable attorneys' fees, courts customarily begin by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Holick v. Cellular Sales*, 48 F.4th 101, 106 (2d Cir. 2022) (citation omitted). To determine a reasonable hourly rate, a court has "considerable discretion" to bear in mind "all pertinent factors" to a reasonable rate, including those articulated *in Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019) (citation omitted). Courts are not strictly required to consider each of these factors, but the factors may assist in calculating a reasonable fee. *Id*. at 233. Additionally, "[t]he reasonable hourly rate is a rate a paying client would be willing to pay." *Id*. at 230 (citation omitted). Accordingly, a court "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id*. (citation omitted).

"In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are excessive, redundant, or otherwise unnecessary." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (citation omitted). To address such unnecessary entries, courts have discretion "simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id*. (citation omitted).

5

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (citation omitted). The determination of the degree of success obtained is made by examining "the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint." *Holick*, 48 F.4th at 106 (citation omitted).

Finally, the goal in awarding fees is "to do rough justice, not to achieve auditing perfection." *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (citation omitted). As a result, "the determination of fees should not result in a second major litigation." *Id*. (citation omitted).

**APPLICATION**

Pursuant to the terms of the settlement agreement, Plaintiffs are entitled to recover their reasonable attorneys' fees and costs. The Court considers the fees and costs separately.

**I.   Reasonable Attorneys' Fees**

Below, the Court considers reasonable hourly rates and reasonable hours for the SZS attorneys who worked on this case in order to arrive at the lodestar amount to be awarded.

**A.   Reasonable Hourly Rate**

Plaintiffs seek recovery of attorneys' fees based upon work done by Scarola at an hourly rate of $765.00, Eagle at an hourly rate of $500.00 and a legal assistant at an hourly rate of $125.00. (*See* Pls.' Mem. at 11.) Both Scarola and Eagle are experienced litigators with impressive credentials. (*See* Scarola Decl., ECF No. 36, ¶ 3; Eagle Decl. ¶¶ 8-13.) Applying the relevant factors, the Court determines, in its discretion, that a reasonable hourly rate for both Scarola and Eagle in the unique circumstances of this case is $500.00. In making this determination, it is significant

6

that the actual billing rate initially agreed upon by the Whites for Eagle's time was $500.00, subject to a cap of $500.00 for other SZS attorneys, and that SZS's client actually paid this hourly rate for time billed by Scarola and Eagle. *See Erchonia Corp. v. Bissoon*, No. 07-CV-08696 (DLC), 2010 WL 2541235, at *2 (S.D.N.Y. June 15, 2010) ("'the actual billing arrangement is a significant, though not necessarily controlling, factor' in determining a reasonable fee" (quoting *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001))); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544-45 (S.D.N.Y. 2008) (finding evidence of fees actually charged instructive in determining reasonable hourly rate).

Eagle was retained by, and performed the initial legal services for, Plaintiffs in this case. On the record before this Court, Eagle had the requisite experience and ability to effectively litigate this case himself, without needing to involve his more experienced colleague, Scarola, at a higher hourly rate. "[B]earing in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Lilly*, 934 F.3d at 230, the Court finds that a $500.00 hourly rate is a reasonable rate for both attorneys in this case.

The Court also finds that the $125.00 hourly rate for a legal assistant is reasonable. *See Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004).

### B. Reasonable Hours

At the outset of SZS's work in connection with this case, 32.25 hours were billed to and paid by Plaintiffs at a rate of $500.00 per hour. (*See* Eagle Decl. ¶ 35 & Ex. 8.) Based upon the Court's review of the relevant invoices (*see* Eagle Decl. Ex. 8), the Court finds the hours billed on these invoices to be reasonable.

Plaintiffs also seek to recover fees based upon 162.3 hours spent by Scarola, 78.45 hours spent by Eagle and 0.3 hours spent by a legal assistant for additional hours billed prior to settlement of this case.[6] (*See* Pls.' Mem. at 11.) SZS achieved success for its clients and therefore is deserving of a fee award. However, the Court finds that SZS did not need two experienced attorneys working on the matter and did not need to spend the number of hours that it did in order to achieve its success.

Based upon the Court's review of the relevant time entries (*see* Eagle Decl. Ex. 10, ECF No. 35-10), there was excessive and unnecessary time billed. For example, Scarola and Eagle billed in excess of 50 hours in connection with researching claims to assert in the Complaint and in drafting what ended up being a 20-page Complaint with four causes of action.[7] (*See id*. at 1-6.). The Court finds the hours billed in connection with the Complaint excessive, particularly considering Scarola's and Eagle's level of experience. Moreover, the Complaint contained certain allegations identical to allegations contained in EFTA complaints filed in other cases (*see* Yuzek Aff. ¶¶ 35-36 and Ex. F (ECF No. 32-6) & Ex. G (ECF No. 32-7)), which should have somewhat reduced the hours spent on drafting the Complaint. As another example, in connection with correspondence with the Court on July 26 and 27, 2022 regarding document production needed in advance of the settlement conference (*see* Discussion Section, *supra*), Scarola billed 4.2 hours and Eagle billed 3 hours in circumstances where, in the Court's view, either alone could have dealt with the issue. There also are other instances of excessive and unnecessary time billed.

---

[6] Plaintiffs refer to these hours as hours billed "[f]or the contingent case." (*See* Pls.' Mem. at 11.)

[7] Although Scarola billed most of the hours in connection with the Complaint, Eagle also billed hours for the Complaint. (*See* Eagle Decl. Ex. 10 at 3-5.)

At bottom, the Court finds that the total hours billed by SZS for the contingent case to be excessive, particularly given the early stage of the case at the time it settled. To address the excessive and unnecessary time billed, the Court shall "deduct a reasonable percentage of the number of hours claimed." *See Raja*, 43 F.4th at 87. In making its determination of the percentage reduction to be used, the Court is guided by the principle of rough justice. "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018), *aff'd*, No. 15-CV-2044 (AJN) (SDA), 2018 WL 3094913 (S.D.N.Y. June 21, 2018) (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Taking all the foregoing into account, and after careful review of the record, the Court in its discretion implements a 50% reduction[8] in the hours billed by Scarola and Eagle "[f]or the contingent case."[9]

The chart below reflects a calculation of the fees awarded, by timekeeper:

---

[8] "Courts in this district have applied percentage reductions of up to fifty percent to address overbilling issues, driven by case and billing specifics." *Charles v. Seinfeld*, No. 18-CV-01196 (AJN), 2022 WL 889162, at *7 (S.D.N.Y. Mar. 25, 2022) (citing cases).

[9] The Court, in its discretion, declines to award hours billed in connection with the instant motion. This case was resolved in principle on October 27, 2022, based upon the Court's proposal that Defendant pay to Plaintiffs "reasonable attorneys' fees and costs in an amount to be determined by the Court." (*See* Yuzek Aff. ¶ 28.) The Court finds that it was not contemplated at the time that Defendant would be responsible for paying Plaintiffs' legal fees in subsequent proceedings to determine the amount.

| Name | Hourly rate | Hours | Amount awarded |
|---|---|---|---|
| Scarola | $500 | Contingent case: 81.15 (50% of 162.3) | $40,575.00 |
| Eagle | $500 | Hourly fees: 32.25 | $16,125.00 |
|  |  | Contingent case: 39.23 (50% of 78.45) | $19,615.00 |
| Legal Assistant | $125 | Contingent case: 0.3 | $37.50 |
| **TOTAL** |  |  | **$76,352.50** |

Defendant suggests that, due to the contingency arrangement that Plaintiffs had with their counsel, the fee award should be substantially reduced. (*See* Def.'s Opp. Mem., ECF No. 33, at 3.) However, the fee award and the contingency agreement between Plaintiffs and their counsel are two separate things. In *Venegas v. Mitchell*, 495 U.S. 82 (1990), the Supreme Court held that an award of attorneys' fees under a federal fee-shifting statute does not dictate the fee the plaintiff must pay his attorney pursuant to their fee arrangement. *See id*. at 86-87; *see also Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 231 (S.D.N.Y. 2016) ("Under *Venegas*, the prevailing attorney's fee thus may be higher than that awarded from the losing party.").[10]

## II.     Reasonable Costs

Plaintiffs also seek reimbursement of costs in the amount of $15,108.21. (*See* Pls.' Mem. at 25.) This amount is comprised of $14.66 for a certified mail charge; $402.00 for the filing fee in this case; $160.53 for process server fees; $1,249.77 for "ordinary charges"; and $13,281.25

---

[10] Of course, Plaintiffs' counsel in this case may not receive both the fee award and the contingency fee. *See Gonzalez v. City of New York*, No. 01-CV-05584 (JG) (MDG), 2007 WL 9706463, at *7 (E.D.N.Y. Jan. 3, 2007) ("the Second Circuit has long held that an attorney may not receive a contingency fee on top of a statutory fee award resulting in a windfall recovery for plaintiffs' counsel" (citing *Wheatley v. Ford*, 679 F.2d 1037, 1041 (2d Cir. 1982)).

for an invoice from StoneTurn Group, LLP ("Stone Turn"). (*See* Eagle Decl. ¶¶ 35, 41 & n.3 and Ex. 8.) Reasonable costs include those "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).

The Court finds that the certified mail charge, filing fee and process server fees are properly compensable. The Court declines to award the $1,249.77 for so-called "ordinary charges." These charges were based upon a 3.5% surcharge on top of time charges, ostensibly in lieu of SZS charging Plaintiffs separately for items including telephone charges, meal expenses and overtime. (*See* Eagle Decl. Ex. 8 at PDF pp. 2-3, 5-6, 8, 10, 13, 16.) Because Plaintiffs' counsel has failed to document out-of-pocket expenses actually incurred that are included in the $1,249.77, the Court finds that it is not recoverable.

Finally, the Court considers the Stone Turn invoices. Stone Turn, which employs computer forensics specialists, was retained by Plaintiffs' counsel to investigate how the funds were stolen from Plaintiffs' accounts. (*See* Eagle Decl. ¶ 19.) During oral argument, Plaintiffs' counsel represented that Plaintiffs paid the Stone Turn invoices. The Court has reviewed the Stone Turn invoices, and finds that Plaintiffs are entitled to an award in the amount of the invoices, *i.e.*, $13,281.25, to reimburse them for the amounts they paid. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-01318 (GBD) (BCM), 2020 WL 2512045, at *5 (S.D.N.Y. May 15, 2020) (allowing recovery of outside expert fees for "technical forensic services").

Thus, the Court awards costs to Plaintiffs in the amount of $13,858.44.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs are awarded $76,352.50 in attorneys' fees and $13,858.44 in costs, for a total award of $90,210.94.

**SO ORDERED.**

Dated:     New York, New York
           February 27, 2023

_____
STEWART D. AARON
United States Magistrate Judge